IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| VAKHTANG GATSHETSHILADZE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:25-cv-2405 (LMB/IDD) |
| | ) | |
| TODD M. LYONS, et al., | ) | |
| | ) | |
| Respondents. | ) | |

ORDER

Petitioner Vakhtang Gatshetshiladze ("Gatshetshiladze"), a native and citizen of Georgia,

has filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241,

in which he asserts that he has been illegally detained by the U.S. Department of Homeland

Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since November 20,

2025. Specifically, he alleges that his characterization by DHS as an "applicant for admission"

pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C.

§ 1225(b)(2), violates the Immigration and Nationality Act (Count I), the bond regulations

codified at 8 C.F.R. §§ 236.1, 1236.1, and 1003.19 (Count II), and his due process rights (Count

III).

Gatshetshiladze is currently detained at the Caroline Detention Center, which is within

this Court's jurisdiction and the basis upon which he is suing Paul Perry, the warden of the

Caroline Detention Center. He has also sued Todd M. Lyons, the Acting Director of ICE; Joseph

Simon, the Director of the Washington Field Office of ICE's Enforcement and Removal

Operations Division; Kristi Noem, the DHS Secretary; Pamela Bondi, the Attorney General; and

the Department of Homeland Security (collectively, "the federal respondents"). For the reasons

discussed in this Order, the Court finds that Gatshetshiladze's detention is unlawful. Accordingly, his Petition will be granted as to Count III, and respondents will be ordered to release him from custody.[1]

I.

According to his Petition, Gatshetshiladze has resided in the United States since 1994. [Dkt. No. 1] at ¶ 45. As a teenager, Gatshetshiladze became politically active in pro-democracy movements opposing the Soviet and later post-Soviet governments in Georgia. [Dkt. No. 7] at 1. His involvement in these pro-democracy movements led to "repeated arrests, detentions, beatings, and torture" by police and paramilitary forces associated with the Georgian government, leading him to flee Georgia for the United States. Id. at 2-3. Petitioner entered the United States on February 5, 1994, on a B-2 visitor visa, and initially stayed with his uncle in Washington, D.C. Id. Gatshetshiladze's stay was lawfully extended through October 15, 1994, and on October 31, 1994, he obtained an F-1 student visa. Id. at 3. Gatshetshiladze studied English and pursued an education at Montgomery College in Rockville Maryland, Lado International College in Washington, D.C., and National Graduate University in Arlington, Virginia. Id. Since his arrival in the United States, Gatshetshiladze has been self-employed as a musician and music instructor: "music is therapy for him and is often the only source of remedy for his pain and suffering." Id.

---

[1] Because the Court is granting relief on due process grounds, it need not address Gatshetshiladze's arguments based on the the Immigration and Nationality Act or the implementing bond regulations. Additionally, Gatshetshiladze has no cognizable claim for attorney's fees under the Equal Access to Justice Act ("EAJA") because a habeas proceeding is not a "civil action" under the EAJA. Obando-Segura v. Garland, 999 F.3d 190, 195 (4th Cir. 2021); accord Luna Quispe v. Crawford, 1:25-cv-1471-AJT-LRV, Dkt. No. 17 at 6 (E.D. Va. Sept. 29, 2025).

On January 26, 1996, Gatshetshiladze filed an asylum application based on his political opinion and fear of persecution in Georgia. Id. On August 26, 1997, an Immigration Judge denied the asylum request, relying in part on the U.S. Department of State's questioning the authenticity of Gatshetshiladze's documents, id.; see also [Dkt. No. 7-1] at 10-11, but granted petitioner Voluntary Departure, [Dkt. No. 4-1] at ¶ 6. Petitioner did not leave the United States pursuant to the grant of Voluntary Departure. [Dkt. No. 4-1] at ¶ 6. Instead, Gatshetshiladze appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"). [Dkt. No. 7] at 3-4. The BIA ultimately dismissed the appeal on March 19, 2002, placing Gatshetshiladze under a final order of removal. Id. In response, Gatshetshiladze filed an appeal with the United States Court of Appeals for the Fourth Circuit, but that appeal was denied based on untimely filing.[2] Id. at 4. Gatshetshiladze also filed motions in 2002 and 2008 with the BIA to reopen and reconsider the final order of removal, submitting additional evidence including medical documentation, affidavits, updated country conditions, and an affidavit describing renewed political expression from the United States. Id. The BIA dismissed both motions. Id. at 4-5.

In January 2008, Gatshetshiladze was taken into ICE custody and detained at the Piedmont Regional Jail for nearly three months before being released on April 14, 2008, under an Order of Supervision.[3] Id. at 5; see also [Dkt. No. 7-1] at 191-196 (Order of Supervision and

---

[2] Gatshetshiladze's Petition explains that his original counsel, who helped file his asylum application, "became terminally ill and was forced to withdraw from representation, severely disrupting [petitioner's] ability to pursue timely legal remedies." [Dkt. No. 7] at 4. Once Gatshetshiladze retained new counsel, he filed an appeal with the United States Court of Appeals for the Fourth Circuit, but this appeal was too late. Id.

[3] Attached to the federal respondents' Opposition is a Declaration from Charles M. Byrne, Assistant Field Office Director ("Declaration"), which details relevant immigration history for

3

Statement of Vakhtang Gatshetshiladze In Support of Application for Employment Authorization). Following his release, Gatshetshiladze has remained in the United States, living in California from 2009 to 2018, where he worked as a music teacher, and moving to Washington, D.C. in 2018. [Dkt. No. 7] at 5. On November 20, 2025, ICE "contacted [p]etitioner and instructed him to appear in person under the representation that there was a technical issue with the ICE reporting application he was using as part of supervision." [Dkt. No. 10] at 1. "Relying on that representation, [p]etitioner appeared voluntarily and was immediately detained." Id. ICE revoked Gatshetshiladze's order of supervision and took him into custody at the Caroline Detention Center, where he remains. [Dkt. No. 7] at 6; see also [Dkt. No. 7-1] at 201-02; [Dkt. No. 8] at ¶ 14. Several days after petitioner's arrest, ICE provided him with a Notice of Revocation of Release on December 5, 2025, that stated the following:

> This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of [ICE]. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.
>
> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. Your attempts to appeal and reopen this order have been denied or dismissed by the Board of Immigration Appeals. Your case is currently under review by the nation of Georgia for the issuance of a travel document.
>
> [Dkt. No. 7-1] at 200-02.

While in custody, Gatshetshiladze has been "evaluated by ICE medical staff and diagnosed with post-traumatic stress disorder, with symptoms directly linked to childhood abuse and political violence he experienced in Georgia." [Dkt. No. 7] at 6; see also [Dkt. No. 7-1] at

---

Gatshetshiladze; however, the Declaration does not include petitioner's nearly three-month detention in the Piedmont Regional Jail. See [Dkt. No. 4-1].

204. On January 16, 2026, Gatshetshiladze renewed his Motion to Reopen before the BIA. See generally, [Dkt. No. 8].

Gatshetshiladze filed the pending Petition for Writ of Habeas Corpus on December 19, 2025. [Dkt. No. 1]. This Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to "file either a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), or an Opposition to the Petition discussing the material differences between Ceba Cinta and this Petition." [Dkt. No. 2] at 1. In response, the federal respondents filed an Opposition to the Petition for a Writ of Habeas Corpus ("Opposition"), arguing that because Gatshetshiladze is subject to a final order of removal he is detained pursuant to 8 U.S.C. § 1231, and therefore, his detention is lawful under the standards established by Zadvydas v. Davis, 533 U.S. 678 (2001). [Dkt. No. 4] at 2. Pursuant to this Court's Orders, the parties provided supplemental briefing on petitioner's history in the United States, as well as supplemental briefing on whether Gatshetshiladze's detention violates his procedural due process rights. See [Dkt. Nos. 6-10]. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

II.

Under 8 U.S.C. § 1231, noncitizens like Gatshetshiladze who have received a final order of removal shall be detained during a ninety-day "removal period" following their final order to effectuate their removal. Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(2)). "During the removal period, detention is mandatory." Id. (citing 8 U.S.C. § 1231(a)(2)). After the ninety-day deadline for removal, DHS may release a noncitizen subject to

5

terms of supervision. 8 U.S.C. §§ 1231(a)(3), (6). DHS followed that process in 2008 and released Gatshetshiladze on an Order of Supervision. See [Dkt. No. 7-1] at 191-196. DHS may also continue to detain a noncitizen in certain circumstances, including where the noncitizen is inadmissible or DHS determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); see also Castaneda v. Perry, 95 F.4th 750, 755 (4th Cir. 2024). If DHS releases an individual, it may subsequently re-detain an individual under certain circumstances, including where necessary to enforce a removal order or where there has been a change in circumstances. See 8 C.F.R. §§ 241.4(l); 241.13(h)(i)(2). Section 1231 does not impose an explicit limit on how long an individual may be detained, either following the removal period or after the revocation of an order of supervision; however, the Supreme Court has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." Zadvydas v. Davis, 533 U.S. 678, 682 (2001). Zadvydas construed § 1231 to "contain an implicit limit on terms of detention," Dong Lu v. Noem, et al., No. 1:25-cv-390-MSN-IDD, slip op. at 4, "the application of which is subject to federal-court review[,]" Zadvydas, 533 U.S. at 682. Under Zadvydas, "a noncitizen's detention pursuant to § 1231 is presumptively unlawful and violates due process if his detention extends for more than six months and the petitioner 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" Dong Lu, No. 1:25-cv-390-MSN-IDD, slip op. at 4 (quoting Zadvydas, 533 U.S. at 701). "If the [noncitizen] makes these prima facie showings, the burden shifts to the government to provide evidence in rebuttal." Menghua Wan v. Crawford, 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (citing Zadvydas, 533 U.S. at 701).

6

III.

In their Opposition, the federal respondents argue that Gatshetshiladze's detention is lawful because he is under a final order of removal; his detention, which has lasted for around three and a half months, remains presumptively reasonable under Zadvydas; and he has failed to demonstrate that "removal is not significantly likely in the foreseeable future." [Dkt. No. 4] at 3-7. The Court disagrees. "As other courts in this Circuit have recognized, the Supreme Court in Zadvydas did not announce a categorial bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable." Bautista Serpas v. Simon, et al., No. 1:25-cv-2369-AJT-WBP, slip op. at 7 (citing Portela-Hernandez v. Trump, No.25-cv-1633-BAH, 2026 WL 74042, at *8 (D. Md. Jan. 9, 2026) ("The Zadvydas presumption is rebuttable, and if [Petitioner] can prove that his removal is not reasonably foreseeable, then he can overcome that presumption.") (alteration in original); Zavvar v. Scott, 2025 WL 2592543, at *6 (D. Md. Sept. 8, 2025) (holding that Zadvydas's six-month presumption is rebuttable)).[4]

Based on the record, the Court concludes that because Gatshetshiladze has sufficiently demonstrated that there "is no significant likelihood of removal in the reasonably foreseeable future[,]" he has rebutted the presumption that his detention is reasonable. Zadvydas, 533 U.S. at 701. Although Gatshetshiladze's order of removal became final 24 years ago in March 2002, he has not been removed, and has been released under supervision since 2008. [Dkt. No. 7] at 4-5. Gatshetshiladze's nearly three-month detention in 2008 before being released under supervision provides further support for his argument that his removal is not reasonably foreseeable.

---

[4] The Court also notes the number of federal courts in the country that have held that the Zadvydas presumption does not apply to petitioners like Gatshetshiladze, who were not continuously detained throughout their statutory removal periods and thereafter, but were instead released on supervision for years before their redetention. See, e.g., Phommachak v. Wesling, No. CV 25-13894-BEM, 2026 WL 157491, at *6 (D. Mass. Jan. 20, 2026).

Although neither party has explained why ICE ultimately chose to release petitioner, it can be inferred that ICE attempted—but failed—to remove Gatshetshiladze in 2008. See id. at 5; [Dkt. No. 7-1] at 191-196. The federal respondents, in their Opposition, assert that Gatshetshiladze has failed to meet his burden because "he is not subject to withholding of removal from Georgia, and thus ICE will be able to remove [p]etitioner to Georgia once that country issues travel documents." [Dkt. No. 4] at 6 (citing Mattete v. Loiselle, 2007 WL 3223304, at *4 (E.D. Va. Oct. 26, 2007) ("Even though a nation has not granted travel documents to a petition, or has refused to grant travel documents, [that] does not prove that a petitioner has no reasonable likelihood of being removed.")). This argument misses the point, especially as it ignores Gatshetshiladze's long period of release and the government's inability to remove him in the past. Accordingly, the Court finds that Gatshetshiladze has established that there is no significant likelihood that he will be removed in the reasonably foreseeable future, which means that his current detention violates due process.

The Court also finds that the procedure ICE used to revoke Gatshetshiladze's Order of Supervision violated the INA Regulations, 8 C.F.R. § 241.4(l), and in turn, petitioner's right to procedural due process. Under DHS regulations, DHS may revoke the release of a noncitizen if an official determines that:

(i) The purposes of release have been served;

(ii) The alien violate[d] any condition of release;

(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2).

"Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole" and "afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." Id. at § 241.4(l)(1).

Following the January 28, 2026, Order, which required the parties to "provide the Court with additional briefing on whether [petitioner's] detention violates his procedural due process rights[,]" Gatshetshiladze provided supplemental briefing that explained he was "suddenly taken into custody without notice and without any opportunity to be heard" on November 20, 2025. [Dkt. No. 10] at 1. Specifically, the brief states that before being arrested,

> "ICE did not inform [p]etitioner that his release was being revoked or that detention was being contemplated. Instead, ICE contacted [p]etitioner and instructed him to appear in person under the representation that there was a technical issue with the ICE reporting application he was using as part of supervision. Relying on that representation, [p]etitioner appeared voluntarily and was immediately detained."

> Id. (emphasis in original).

According to Gatshetshiladze, this "method of re-detention—effectuated through misrepresentation rather than notice . . . creates an acute risk of erroneous deprivation of liberty." Id. (emphasis in original). Although the Court's January 28, 2026, Order, gave the federal respondents seven days to respond to petitioner's supplemental briefing, the federal respondents neither filed a response in opposition nor requested an extension of time to file a response, thereby leaving the petitioner's representations uncontested.

"'[T]he essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Perez-Escobar v. Moniz, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) (quoting Aponte-Rosario v. Acevedo-Vila, 617 F.3d 1, 9 (1st Cir. 2010) (internal quotations omitted)). "Likewise, under DHS's

regulation, 'in order to revoke conditional release, the Government must provide adequate notice' and give the noncitizen 'an opportunity to respond to the reasons' offered for the revocation." Id. (quoting Noem v. Abrego Garcia, 604 U.S. ——, 145 S. Ct. 1017, 1019 (2025) (statement of Sotomayor, J.)). Here, ICE's method of revoking Gatshetshiladze's release and his subsequent re-detention did not offer him any notice or opportunity to be heard. As Gatshetshiladze alleges, he "was not informed of any alleged basis for detention and was given no opportunity to contest it" before being detained. [Dkt. No. 10] at 2 (emphasis in original). In fact, ICE did not issue petitioner a Notice of Revocation of Release until December 5, 2025, fifteen days after his arrest. See [Dkt. No. 7-1] at 201. Furthermore, upon review of the Notice of Revocation of Release, the Court finds that although ICE determined "there [were] changed circumstances in [petitioner's] case[,]" [Dkt. No. 7-1] at 200-02, ICE did not "identify any specific changed circumstances to support these assertions[,]" Perez-Escobar, 792 F.Supp.3d at 226, and the federal respondents have not filed any supplemental evidence showing that as of March 4, 2026, removal of petitioner to Georgia is imminent. The absence of any such evidence of changed circumstances is especially concerning because Gatshetshiladze has "lived openly in the United States for decades" and has "complied with ICE supervision, including electronic reporting" for years. [Dkt. No. 10] at 2. "ICE's conclusory explanation for revoking [p]etitioner's release did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond[.]" Perez-Escobar, 792 F.Supp.3d at 226.

IV.

For the reasons stated above, the Court finds that Gatshetshiladze's continued detention is unlawful under Zadvydas and violates his due process rights. Accordingly, the Petition, [Dkt. No. 1] is GRANTED as to Count III, and it is hereby

10

ORDERED that the federal respondents release Gatshetshiladze, with all his personal property, by 10:00 am on Thursday, March 5, 2026 pursuant to the Order of Supervision under which Gatshetshiladze was released on April 14, 2008; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Gatshetshiladze except upon a concrete showing of imminent removal, or if he violates any condition of supervision.

The Clerk is directed to enter judgment in Gatshetshiladze's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 4 day of March, 2026.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

11